IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN A. RUHL, )<br>)<br>                Plaintiff, )<br>)<br>v. )<br>)<br>DAVID H. POWERS, )<br>K & B TRANSPORT, INC. and )<br>CHEROKEE INSURANCE COMPANY, )<br>)<br>                Defendants, )<br>)<br>v. )<br>)<br>BUILDING CONTROLS AND )<br>SERVICE and ACCIDENT FUND )<br>INSURANCE COMPANY, )<br>)<br>                Intervenors. )<br>_____) | **CIVIL ACTION**<br><br>No.  07-1084-MLB |

**MEMORANDUM AND ORDER**

Before the court are the following:

1. Plaintiff's amended motion to approve settlement (Docs. 49 and 52);

2. Intervenors' memorandum in response (Doc. 55); and

3. Plaintiff's reply (Doc. 56).

On March 21, 2008, the court heard the testimony of Edward Hett, M.D., plaintiff's treating physician; Richard Ruth, Ph.D., an economist retained by plaintiff; and Peggy Ruhl, plaintiff's wife. The court received in evidence several exhibits. Based on the testimony and the evidence, the court makes the following findings and orders.

<u>Findings</u>

On March 14, 2006, plaintiff sustained catastrophic injuries in

a motor vehicle accident while in the course and scope of his employment with Building Controls and Service. At the time of the accident, plaintiff was 52. He was married with five children, all of whom were then living at home. According to the testimony of Dr. Hett, who had been plaintiff's treating physician for over twenty years at the time of the accident, plaintiff's injuries have rendered him unable to return to his employment with Building Controls and, in all probability, plaintiff will be unable to have substantial gainful employment in the future. Dr. Hett believes that plaintiff has reached maximum medical improvement in terms of his physical injury but nevertheless will need life-long medical care. Plaintiff's psychological impairments may improve over time but Dr. Hett offered no opinion regarding the extent of improvement.

Peggy Ruhl testified that at the time of the accident and for 18 years prior thereto, plaintiff was the sole source of income for the family. Mrs. Ruhl stayed at home to raise the couple's five children, all of whom have been home schooled. Prior to the accident, plaintiff helped around the house and the Ruhls' "hobby farm" but he traveled a lot and the burden of caring for the children and attending to their daily needs and activities rested primarily on Mrs. Ruhl. For a substantial period following the accident, plaintiff was unable to function as a husband and father. He has improved over time and can do some things around the house and farm but it takes him longer to do so. It is still difficult for him to concentrate. Plaintiff has to be frequently reminded about things and does not handle change well. He either does not drive or drives very little (the evidence on this was unclear), cannot pay bills and cannot handle emergencies.

There is no question that the accident permanently changed the relationship between plaintiff and Mrs. Ruhl in many ways. To the extent the Ruhls shared responsibilities for the home and children prior to the accident, it is clear that Mrs. Ruhl now carries those responsibilities almost single-handed and will continue to do so for the foreseeable future.

Richard Ruth, Ph.D. was retained by plaintiff's counsel to provide an appraisal of the economic loss suffered by Peggy Ruhl as a result of plaintiff's injuries. Intervenors stipulated to Ruth's qualifications. Ruth interviewed Mrs. Ruhl and then prepared a report regarding her economic losses in five areas: homestead, chauffeuring, children's activities, guidance counsel and advice provided by plaintiff to Mrs. Ruhl and parental advice and counsel he provided to the children. Ruth fixed the economic loss at $509,317.

To date, plaintiff's employer has paid $425,612.87 in medical benefits and $45,766 in indemnity benefits. The balance of the indemnity benefits, $79,234 representing total disability, will be paid at the rate of $467 per week until exhausted. Expenses relating to future medical treatment will be paid for the duration of plaintiff's life.

Plaintiff's counsel's 40% contingency fee contract is unobjected to. Plaintiff's counsel has expenses of $9,500, not including unspecified charges for Dr. Hett and economist Ruth's appearances at the March 21 hearing.

The parties have arrived at a settlement of $983,820.60 through mediation.

## Discussion

The primary issue for decision is the allocation of the settlement proceeds between plaintiff and Mrs. Ruhl for her claim of loss of consortium and loss of services. K.S.A. 44-504(a) creates a right of action in favor of the payor of worker's compensation benefits, i.e., the employer or the employer's insurance provider, against a third party who is responsible for the damages incurred by an injured worker. Under § 504(b), if a settlement is reached between the injured worker and the responsible third party, the employer has a lien against the entire amount of the settlement, ". . . excluding any recovery, or portion thereof, determined by the court to be loss of consortium or loss of services to a spouse." Therefore, the issue framed by the parties in their respective submissions is the amount of the settlement attributable to Mrs. Ruhl's loss of consortium and loss of services.

K.S.A. 23-205 defines loss of or impairment of services as the loss of the spouse's ability to perform services in the household and in the discharge of her domestic duties. Kansas cases have interpreted § 205 to ". . . mean all the benefits that accrue as the result of the conjugal relations, such as society, comfort, aid, assistance and any other act that tends to make wedded life worthwhile." Cleveland v. Wong, 237 Kan. 410, 423, 701 P.2d 1301 (1985) (internal citations omitted). See also PIK 3d 171.06 which defines loss of services as ". . . loss or impairment of plaintiff's ability to perform services in the household and in the discharge of his domestic duties, and the loss or impairment of plaintiff's companionship, aid, assistance, comfort and society." According to the comment: "the terms 'services' and 'domestic duties' as used in

the statutes include companionship given a husband by his wife." Clark v. Southwestern Greyhound Lines, 144 Kan. 344, 58 P.2d 1128 (1936). The terms include not only manual labor about the house but also the performance of matrimonial, conjugal and connubial acts and duties, including social obligations, affection, and sexual relations." Cleveland v. Wong, supra; see also Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1528-29 (10th Cir. 1997).

Consortium has been defined as a right growing out of the marital relationship which includes the right of either spouse to the society, companionship, conjugal affection and assistance of the other. Farmers Ins. Co., Inc. v. Jokan, 30 Kan. App. 2d 1213, 1219, 57 P.3d 24 (2002) (citing Hoffman v. Dautel, 192 Kan. 406, 411, 388 P.2d 615 (1964)).

Loss of services has an economic component, which plaintiff asserts was established by Ruth's testimony. Loss of consortium is non-economic but is capped at $250,000. Plaintiff contends that Mrs. Ruhl's loss is therefore $759,317.

Intervenors' figure is dramatically different. Intervenors specifically challenge Ruth's loss of services evaluation of "guidance, counsel, advice services" of $290,875, which Ruth determined by calculating the cost of marriage and family therapist to provide substitute services for plaintiff to Mrs. Ruhl in excess of $21.00 per hour, seven days a week, for the remainder of plaintiff's expected life. Similarly, intervenors challenge Ruth's loss of services evaluation of "parental, advice and counsel" of $109,306 based upon a substitution of a social worker's services in excess of $16.00 per hour for 5-10 hours per week for remainder of

plaintiff's life expectancy. In the end, intervenors argue that plaintiff should be assigned 90% of the recovery and Mrs. Ruhl 10%, evidently on the basis of equity or pure discretion because intervenors do not explain how the 90/10 split was arrived at. Intervenors do not object to counsel's 40% contingency fee but believe it is subject to the requirements of K.S.A. 44-536. Plaintiff's counsel's expenses were not available at the time of the hearing but intervenors have not objected to the expense figure set out in plaintiff's reply.

## Discussion

The parties agree that if this case had been tried to a jury, plaintiff's recoverable damages would exceed one million dollars. However, defendants Powers and K & B Transport have no money so the only source of funds was worker's compensation. There is no dispute regarding the amount of plaintiff's medical bills nor is there any serious dispute regarding plaintiff's inability to hold down a job in the future, much less a job which would pay the 70+ thousand dollar salary he was earning at the time of the accident. Indeed, intervenors admit that "all evidence agrees Mr. Ruhl is permanently and totally disabled as a result of his injuries, and said injuries bar him from engaging in further substantial gainful employment." Under these circumstances, the court finds the $983,820.60 settlement to be fair and reasonable.

Intervenors' principal dispute is with the opinions of economist Ruth, which they characterize as ". . . at best was confusing, disjointed, skewed and unpersuasive." The court will admit that he has heard clearer testimony from other economists. But here is the

-6-

intervenors' problem: Ruth's opinions must be evaluated under Fed. R. Evid. 702 and 703.  Ruth's qualifications as an economist were stipulated.  His testimony was based upon sufficient facts or data, at least to the extent that intervenors did not successfully impair Mrs. Ruhl's testimony regarding loss of services, which formed the basis for Ruth's opinion.  Intervenors' arguments do not cite Rules 702 and 703 but they appear to be directed at the reliability of the principles and methods applied by Ruth to the facts.  Ruth's acknowledgment that ". . . another expert could have a different opinion with damages much lessor than his" falls far short of an admission that the principles and methods he utilized were not reliable.  Intervenors cite the language in <u>Wentling v. Medical Anesthesia Services</u>, 237 Kan. 503, 510, 701 P.2d 939 (1985) that "however, even where such evidence [regarding future economic loss] is admitted, the trier of fact will not be bound by the expert's testimony and may accord the testimony little or as much weight as it deems appropriate."  No doubt this is generally true but especially in a matter tried to a federal judge, as opposed to a jury, intervenors' argument would be far more persuasive if they had called a qualified economist to challenge Ruth's opinions.  While the court admits that he has not before heard testimony that a marriage and family therapist can provide substitute services for an injured spouse or that a social worker can provide substitute parental advice and counsel, the court cannot disregard or diminish Ruth's opinions merely on an isolated citation from a Kansas Supreme Court opinion.

Accordingly, the court accepts Ruth's testimony and his loss of services figure of $509,317.  To the extent that in the context of

this case, there is a difference between loss of services damages and loss of consortium damages, intervenors do not dispute the $250,000 loss of consortium amount, capped as it is by statute. Accordingly, the court finds that Mrs. Ruhl's loss is $759,317.

This leaves the issue of attorney's fees. Plaintiff and his counsel entered into a 40% contingency fee contract to which intervenors have no objection. Nevertheless, intervenors' position appears to be that K.S.A. 44-536 fixes a 25% contingency fee maximum as to any recovery for benefits under the Worker's Compensation Act. Section 536 and its provision for a maximum 25% attorney's fee applies to worker's compensation proceedings. According to plaintiff's memorandum (Doc. 52), there was an underlying worker's compensation case handled by plaintiff's counsel's firm but the record does not reflect the details of that proceeding and specifically whether attorney's fees were awarded pursuant to § 536. The attorney's fee issue in this case would appear to be governed by Lemery v. Buffalo Airways, Inc., 14 Kan. App.2d 301, 789 P.2d 1176, review denied, 246 Kan. 767 (1990). None of the parties have cited Lemery.

Lemery discusses K.S.A. 1989 Supp. 44-504(g), the provisions of which remain the same today. While it would have been helpful if the parties had cited and discussed Lemery in their submissions, the bottom line is the court's statement that ". . . 44-504(g) in reference to the worker's recovery, the district court has discretion to determine the appropriate amount of attorney's fees to be paid by the subrogated insurer based upon the amount the plaintiffs will receive from their tort claim recovery period." The opinion makes no reference to K.S.A. 44-536 and its 25% maximum. Because intervenors

-8-

do not object to the 40% contingency contract between plaintiff and his counsel, because the 25% maximum has no demonstrable application here and because intervenors suggest no other alternative, the court finds 40% to be the correct measure of the attorney's fees attributed to the worker's compensation lien.

## Conclusion

On or before April 18, 2008, the parties shall submit a journal entry of judgment which reflects the contents of this memorandum and order.

IT IS SO ORDERED.

Dated this  3rd  day of April 2008, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE
